IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–02470–EWN

JO ANN RICE,

     Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner,
Social Security Administration,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is a social security benefits appeal.  Plaintiff Jo Ann Rice challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits.  Jurisdiction is premised upon 42 U.S.C. § 405(g) (2006).

### FACTS

*1.*    *Medical Evidence*

     Plaintiff was born on February 25, 1959, and was forty-four years old at the onset of her alleged disability.  (Admin. R. at 42 [filed Jan. 3, 2006] [hereinafter "Admin. R."].)  Plaintiff has an eleventh-grade education and has worked in the vocationally relevant past as a waitress and bartender.  (*Id*. at 52, 68, 73.)  Plaintiff alleges that she became unable to work beginning on February 14, 2004, due to pain in her back, legs, and feet.  (*Id*. at 67.)

Plaintiff's medical records reveal that on June 23, 2004, she first visited physician's assistant Jeff McElwain, P.A. with complaints of foot pain, back pain, and "dismobility [sic]." (*Id.* at 90–91.)  Plaintiff reported to Mr. McElwain that she had corrective metal rods in her spine due to injuries she sustained in a motor vehicle accident in 1979.  (*Id.* at 90.)  Plaintiff reported further that after her back injury, she experienced atrophy of her calf muscles and began to walk "quite hard on her feet," resulting in calluses, blistering, and cracking of the skin on her heels.  (*Id.*)  Mr. McElwain: (1) found that Plaintiff had neuropathy in her feet;[1] (2) recommended that Plaintiff soak and moisturize her feet to alleviate the skin damage to her heels; (3) noted that the condition of Plaintiff's feet would preclude her from working for at least a year; and (4) opined that Plaintiff would benefit from job re-training.  (*Id.* at 91.)

On July 22, 2004, Plaintiff returned to visit Mr. McElwain for a physical examination.  (*Id.* at 87–88.)  Plaintiff reported that she experienced some back pain, but took over-the-counter Tylenol PM "with good results."  (*Id.* at 87.)  Mr. McElwain noted that the cracks in Plaintiff's heels had improved and found that Plaintiff was generally a "well woman."  (*Id.* at 87–88.)  Mr. McElwain assessed Plaintiff as depressed and prescribed her medications to treat her menopause and depression.  (*Id.* at 88.)

On August 3, 2004, Barry Hillmer, M.D. examined Plaintiff at the request of the Disability Determination Services.  (*Id.* at 93–100.)  Plaintiff reported to Dr. Hillmer that she could stand up

---

[1]Neuropathy is a disease affecting the nervous system, especially degenerative disease of a cranial or spinal nerve. 4–N J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE 1992 (Matthew Bender 2005).

to one hour, but experienced foot pain and numbness if she walked at great length. (*Id.* at 97.)
Plaintiff stated she could lift twenty pounds, could push and pull a grocery cart, helped her aunt
bring in groceries, and could open doors. (*Id.*) Plaintiff stated that she could not carry a tray, as
is required in restaurant work. (*Id.*) Plaintiff reported that on a typical day, she: (1) worked in
and watered the garden; (2) performed limited housekeeping, including some vacuuming and all
dishwashing; (3) sometimes cooked dinner; and (4) spent much time watching television and
reading. (*Id.*) Plaintiff complained of: (1) pain in her central lumbar spine and ankles; (2) "pins
and needles" with numbness on the soles of her feet; and (3) pain and numbness in her hands and
arms. (*Id.*) Plaintiff reported that she took "lots" of over-the-counter drugs for pain relief, and
made no mention of prescription pain medications. (*Id.* at 95.)

Upon examination, Dr. Hillmer found that Plaintiff stood almost half an inch shorter on
her right side, walked with a limp favoring her left leg, and could not raise herself onto her toes.
(*Id.*) Dr. Hillmer noted that Plaintiff had: (1) no Achilles tendon reflex;[2] (2) decreased sensation
in her calves and feet; and (3) decreased strength in her calves and right toe. (*Id.*) Sitting straight
leg raising disguised as checking reflexes was negative, but regular sitting straight leg raising
caused Plaintiff to complain of central low back pain. (*Id.*) Dr. Hillmer found that Plaintiff had
excellent strength, full range of motion, and excellent sensation in her upper extremities. (*Id.*)
Dr. Hillmer diagnosed Plaintiff with: (1) "[r]esiduals from a severe spine injury . . . with loss of

---

[2]Achilles tendon reflex is the contraction of the calf muscles of the leg produced by a blow
upon the tendon. 1–A J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine 1204
(Matthew Bender 2005).

[calf] musculature function, and severe residual numbness on the bottom of her feet;" (2) mild

night pain in both arms; (3) night numbness in both hands, likely due to mild carpal tunnel

syndrome; (4) depression; and (5) central low back strain.  (*Id.* at 99.)  Dr. Hillmer opined that

Plaintiff could not perform her prior work as a waitress, because such work required significant

standing.  (*Id.* at 100.)  Dr. Hillmer opined further that Plaintiff "may well be trainable to do a

sitting type job at a computer or doing [sic] some type of employment [] involv[ing] mainly

telephone time."  (*Id.*)

On May 10, 2005, Mr. McElwain completed a medical examination form regarding

Plaintiff, in which he: (1) diagnosed Plaintiff with arthritis and pain in her back, legs, and hips; and

(2) opined that Plaintiff was not totally disabled, but had an impairment that substantially

precluded her from performing her usual work.  (*Id.*  at 109–10.)  Mr. McElwain opined that pain

resolution and job re-training would render Plaintiff employable.  (*Id.* at 110.)

## 2.    *Procedural History*

On March 31, 2004, Plaintiff filed an application for disability insurance benefits.  (*Id.* at

42–44.)  On August 18, 2004, the Social Security Administration denied Plaintiff's application.

(*Id.* at 33.)  On September 7, 2004, Plaintiff requested a hearing before an administrative law

judge ("ALJ").  (*Id.* at 37.)  On May 20, 2005, the ALJ held a hearing, at which Plaintiff appeared

*pro se* and testified.  (*Id.* at 123–35.)

Plaintiff testified that she was single, had no minor children, and lived with her aunt.  (*Id.*

at 128.)  Plaintiff stated that her driver's license had been revoked after she received a citation for

driving under the influence.  (*Id.* at 129.)  Plaintiff testified that in 1979, she broke her back in a

car accident and, as a result, she spent nine months in a body cast and had metal rods placed in her back. (*Id.* at 130.) Plaintiff explained that no additional surgery could help her condition. (*Id.* at 132.) Plaintiff testified that she experienced: (1) pain "all up [her] spine" and in her back and hips; and (2) swelling and pain in her feet and legs after standing for two hours.

(*Id.* at 131, 133.) Additionally, Plaintiff testified that, because of loss of strength in her calf muscles, she could not support her weight on her toes and carried her weight on her heels, which caused blisters, bleeding, cracking, and pain. (*Id.* at 133.) Plaintiff stated that due to these problems, she quit her job, moved in with her aunt, and "tr[ied] not to do a whole lot." (*Id.*)

Plaintiff stated that she took prescription and over-the-counter pain medications daily, which alleviated her pain to a "bearable" level. (*Id.* at 131.) Plaintiff testified that hot baths also helped her pain. (*Id.*) Plaintiff testified that at least two of her medical care providers opined that she could not perform her past work, but had suggested that she undergo retraining. (*Id.* at 132.) Plaintiff testified that she had not undertaken any sort of retraining or vocational rehabilitation despite these suggestions. (*Id.*)

Plaintiff testified about her alcoholism,[3] stating that she did not receive psychiatric or psychological treatment or attend Alcoholics Anonymous meetings, but "read on it" for support. (*Id.* at 133.) Finally, Plaintiff testified that she: (1) took medication for depression; and (2)

---

[3]Although Plaintiff did not base her application for benefits on these issues, the record reflects that she sought and received treatment for alcoholism and cocaine addiction. (Admin. R. at 71, 87, 96, 132.)

experienced incontinence, but was not currently receiving medical treatment for the problem.  (*Id.* at 134–35.)  The ALJ concluded the hearing upon completion of Plaintiff's testimony.

On August 2, 2005, the ALJ issued a decision reflecting his findings that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform a full range of sedentary work.  (*Id.* at 10–19.)  In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since February 14, 2004.  (*Id.* at 14.)  The ALJ next determined that Plaintiff's "back disorder[]" was a medically determinable, severe impairment. (*Id.* at 15.)  Despite its severity, the ALJ determined that the impairment was not sufficiently severe to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations Number 4 (the "Listings").  (*Id.*)  The ALJ expressly found that Plaintiff's ailment did not satisfy the requirements of Listing 1.04, which contemplates spine disorders, and gave specific reasons in support of his finding.  (*Id.*)  Additionally, the ALJ found that Plaintiff's complaints of disabling pain were "not fully credible," in light of: (1) Plaintiff's allegations regarding the efficacy of over-the-counter pain medications in controlling pain; (2) the lack of significant findings by physicians; and (3) Plaintiff's daily activities.  (*Id.* at 16.)  Based on the evidence presented, the ALJ concluded that Plaintiff had the RFC to perform sedentary work and was thus not disabled. (*Id.*)

On November 8, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final administrative decision for the purposes of judicial review.  (*Id.* at 5–9.)  On December 7, 2005, Plaintiff filed a complaint in this court challenging the

Commissioner's denial of disability benefits.  (Compl. [filed Dec. 7, 2005].)  On June 1, 2006,

Plaintiff filed her opening brief.  (Pl.'s Opening Br. [filed June 1, 2006] [hereinafter "Pl.'s Br."].)

## ANALYSIS

### 1.    *Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of

the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006)

(incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant

part, that:

> [t]he findings of the Commissioner of Social Security as to any fact,
> if supported by substantial evidence, shall be conclusive, and where
> a claim has been denied by the Commissioner of Social Security or
> a decision is rendered under subsection (b) of this section which is
> adverse to an individual who was a party to the hearing before the
> Commissioner of Social Security, because of failure of the claimant
> or such individual to submit proof in conformity with any regulation
> prescribed under subsection (a) of this section, the court shall
> review only the question of conformity with such regulations and
> the validity of such regulations.

42 U.S.C. § 405(g) (2006).  Thus, this court's review is limited to determining whether the record

as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*;

*Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The

court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See*

*Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot reweigh the evidence or

substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.

1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's

decision is supported by substantial evidence, the record must include sufficient relevant evidence

that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987).  A decision is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting

it.  *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  The ALJ's decision is also subject to

reversal for application of the wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th

Cir. 1988); *Frey*, 816 F.2d at 512.

**2.      *Evaluation of Disability***

The qualifications for disability insurance benefits under the Social Security Act are that

the claimant meets the insured status requirements, is less than sixty-five years of age, and is

under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  The Social Security

Act defines a disability as an inability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In proving disability, a claimant must make

a *prima facie* showing that she is unable to return to the prior work she has performed.  *Huston v.*

*Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Once the claimant meets that burden, the

Commissioner must show that the claimant can do other work activities and that the national

economy provides a significant number of jobs which the claimant could perform.  *Frey*, 816 F.2d

at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See* 20 C.F.R. § 404.1520 (2006); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See* 20 C.F.R. § 404.1520(a) (2006); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). First, the claimant must demonstrate that she is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b) (2006). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits her physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. *Id.* § 404.1520(d) (2006). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents her from performing work she has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e) (2006); *Williams*, 844 F.2d at 751. The fifth step requires the Commissioner to demonstrate that: (1) the claimant has the RFC to perform other work based on the claimant's age, education, past work experience; and (2) there is availability of that type of work in the national economy. *See* 20 C.F.R. § 404.1520(f) (2006); *Williams*, 844 F.2d at 751.

**3.    *Disability Determination***

Plaintiff sets forth four arguments in support of her contention that the ALJ's decision is erroneous. Plaintiff argues the ALJ erred in: (1) evaluating Plaintiff's credibility; (2) evaluating

the severity of Plaintiff's ailments; (3) assessing Plaintiff's RFC; and (4) failing to develop the

record.  (Pl.'s Br. at 10–21.)  I address each argument below.[4]

     *a.*     ***Substantial Evidence Supports the ALJ's Credibility Determination***

The ALJ found that "[Plaintiff's] complaints of disabling pain [were] not fully credible" in

light of her statements that non-prescription medications alleviated her pain, the lack of significant

medical findings, and her daily activities.  (Admin. R. at 16.)  Plaintiff asserts that the ALJ erred in

making this determination because: (1) his reliance on the lack of significant medical findings was

erroneous; (2) he failed to discuss Plaintiff's daily activities or question Plaintiff regarding same at

the hearing; and (3) he failed to ask Plaintiff why she had not sought medical treatment.  (Pl.'s Br.

at 14–17.)  For the reasons discussed below, the ALJ's determination must stand.

"'Credibility is the province of the ALJ.'"  *Musgrave v. Sullivan*, 966 F.2d 1371, 1376

(10th Cir. 1992) (quoting *Brown v. Bowen*, 801 F.2d 361, 362–63 [10th Cir. 1986]).  Indeed,

credibility determinations made by an ALJ are generally considered binding upon review.  *Gossett*

*v. Bowen*, 962 F.2d 802, 807 (10th Cir. 1988).  Such determinations "should not be upset if

supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).  An

ALJ "can weigh and evaluate numerous factors in determining the credibility of pain testimony."

*Huston*, 838 F.2d at 1132.  Some of the possible factors include: (1) the consistency or

compatibility of nonmedical testimony with objective medical evidence; (2) the nature of daily

activities; (3) subjective measures of credibility; (4) the levels of medication and their

---

[4]In the interest of clarity, I analyze Plaintiff's arguments out of the sequential order in which they appear in her brief.

effectiveness; (5) the extensiveness of attempts to obtain relief; and (6) the frequency of medical

contacts.  *Id.*  In accord with the foregoing, I find that the ALJ made no legal error in basing his

determination on the factors he considered.  I turn briefly to each and discuss Plaintiff's arguments

in connection therewith.

The ALJ based his determination in part on the "lack of significant findings by the

physicians" regarding Plaintiff's disability.  (Admin. R. at 16.)  Plaintiff argues that this reliance is

in error because Dr. Hillmer made several significant findings as to Plaintiff's ailments.  (Pl.'s Br.

at 14–15, 17.)  Plaintiff's argument is disingenuous.  In making his credibility determination, the

ALJ specifically noted that the record contained "no statements from providers indicating that

[Plaintiff] was disabled."  (Admin. R. at 16.)  Indeed, both of the medical care providers Plaintiff

visited opined that Plaintiff was not totally disabled and was capable of working.  (*Id.* at 100,

109–10.)  The providers' opinions standing in clear conflict with Plaintiff's allegations of total

disability assuredly serves as significant evidence to support the ALJ's credibility determination.

*Huston*, 838 F.2d at 1132.

The ALJ also based his determination upon the activities Plaintiff alleged she could

perform.  (Admin. R. at 16.)  Plaintiff argues this was in error because the ALJ neither expressly

discussed Plaintiff's specific activities in his decision nor addressed Plaintiff's allegation that she

could only perform household activities at a slow pace.[5]  (Pl.'s Br. at 16.)  Again, Plaintiff's

---

[5]Plaintiff also argues that the ALJ erred in failing to question Plaintiff about her activities
at the hearing.  (Pl.'s Br. at 16.)  I address this issue in my analysis regarding Plaintiff's argument
that the ALJ erred in failing to develop the record.  (*See Analysis* § 2c, *infra.*)

argument is disingenuous.  The ALJ expressly discussed Plaintiff's activities, which included

"working in the garden and watering" and "*limited* housekeeping."  (Admin. R. at 15 [emphasis

added].)  The record indeed evidences Plaintiff's statements that she performed the activities the

ALJ described.  (*Id.* at 62–65, 97.)  Plaintiff makes no argument as to how the ALJ's finding that

she could perform limited housekeeping activities fails to account for her deficiencies in pace, and

I decline the opportunity to make such arguments on her behalf.  (*See* Pl.'s Br.)  As is well-

established in the law, in assessing credibility, an ALJ may consider evidence of a claimant's daily

routine and activities that are inconsistent with allegations of total disability.  *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992).  Consequently, I find that the ALJ committed no

error and was supported by substantial evidence in considering Plaintiff's activities.  To the extent

Plaintiff implicitly requests a re-evaluation of the evidence of her activities underlying the ALJ's

determination, I note the inappropriateness of her demand.  This court cannot and will not

reweigh the evidence or substitute its judgment for that of the ALJ.  *Jordan*, 835 F.2d at 1316.

Finally, the ALJ based his credibility determination in part on the fact that Plaintiff rarely

sought medical attention and successfully took over-the-counter pain medications to alleviate her

pain.  (Admin. R. at 16.)  Plaintiff: (1) argues the ALJ erred in relying on this evidence because he

failed to inquire into the reasons behind her lack of medical consultations and prescription

medication; and (2) emphasizes that she receives approximately three hundred dollars per month

in food stamps and from Social Services.  (Pl.'s Br. at 16.)  Plaintiff suggests, but does not

expressly argue, that perhaps she could not afford medical treatment or prescription drugs, and

thus the ALJ erred in allowing these factors to erode her credibility.  I am not so convinced.

As a matter of course, it is well-established that an ALJ may consider the levels of medication taken and nature and frequency of treatment sought when assessing the intensity of a claimant's pain symptoms. *Luna*, 834 F.2d at 165–66. Nonetheless, these factors are illustrative, not exhaustive. *Huston*, 838 F.2d at 1133 n.7. As the Tenth Circuit noted in *Huston*:

> some people find the side effects of pain medication to offset its benefits, others find little relief in pain medication, while others cannot afford certain prescription medications. Yet their pain can be disabling, nonetheless. . . . [Furthermore,] [s]ome who are disabled may not have been able to afford medical treatment or may have resisted medical help out of pride, fear, or other valid reasons. In some situations it will be enough if, at some point, objective medical evidence is developed that, in combination with nonmedical evidence, supports a finding of disability during the period at issue.

*Id.* First, Plaintiff does not argue that the foregoing extenuating circumstances exist in her case, but even assuming they did, given my analysis set forth above, it simply cannot be said that the ALJ lacked substantial evidence to support his credibility determination. Further, unlike the individual the Tenth Circuit considered in *Huston*, substantial medical and non-medical evidence supports the ALJ's determination that Plaintiff's credibility was suspect in this case.[6] Accordingly, I find that any error the ALJ might have committed in considering Plaintiff's infrequent medical treatment and lack of prescription medication would be harmless. *See Glass v. Shalala*, 43 F.3d 1392, 1397 (10th Cir. 1994) (holding error harmless where evidence issue would

---

[6]From the record, it appears that only Plaintiff is of the opinion that she cannot work. Dr. Hillmer and Mr. McElwain both opined that Plaintiff could work. (Admin. R. at 61–65, 91, 97, 100, 109.) Indeed, Plaintiff's own mother stated that Plaintiff "would excell [sic]" in performing "a job which required no lifting, [or] being on her feet all day." (*Id.* at 96.)

not have unfairly affected the ultimate result).  Based on the foregoing, I find that the ALJ was

supported by substantial evidence and did not err in finding Plaintiff to be less than fully credible.

> **b.**      ***Severity of Plaintiff's Ailments: Listing 1.04***

The ALJ held that "although [Plaintiff] suffer[ed] from back pain," her ailments did not

meet or equal Listing 1.04, which pertains to spine disorders, because "the medical evidence [did]

not demonstrate the radiculopathic distribution of motor and sensory loss required."[7]  (Admin. R.

at 15.)  Plaintiff argues that in making this determination, the ALJ impermissibly "failed to make

sufficient findings for meaningful appellate review," because he "fail[ed] to discuss how he

weighed the evidence."  (Pl.'s Br. at 12.)  Additionally, Plaintiff implicitly argues that relevant

medical evidence of her motor and sensory loss supports a finding that she indeed meets the

requirements of Listing 1.04.  (*Id.* at 14.)  I address each point in turn.

First, Plaintiff argues that the ALJ erred by failing to "discuss how he weighed the

evidence, what he considered and what he disregarded, in reaching his conclusion."  (*Id.* at 12.)

In support of her argument, Plaintiff relies heavily upon the Tenth Circuit's opinion in *Drapeau v.*

*Massanari*, 255 F.3d 1211 (10th Cir. 2001).  Similarly to the instant case, the ALJ in *Drapeau*

found that the plaintiff's ailments did not meet a certain Listing.  255 F.3d at 1213.  However,

*Drapeau* is clearly distinguishable from the case at bar.  In *Drapeau*, the ALJ based his

determination upon the opinion of a consultative examiner despite the plaintiff's treating

---

[7]Radiculopathy is a disease or abnormality of a spinal nerve root from the point where it merges with the spinal cord to the point where it joins its companion root to form a spinal nerve. 5–R J.E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE 218 (Matthew Bender 2005)

physician's opinion — the opinion generally entitled to controlling weight — that the plaintiff's

ailments did meet the Listing.  *Id.*  In short, the *Drapeau* court found that the ALJ erred by

ignoring a controlling opinion and relied on a lesser opinion without giving reasons for either his

rejection or reliance.  *Id.*  In obvious contrast, the ALJ in the instant case did not reject any expert

medical opinion in the instant case.  Rather, the ALJ expressly summarized, discussed, and relied

upon both Mr. McElwain's and Dr. Hillmer's opinions in his decision.  (Admin. R. at 15–16.)

Accordingly, Plaintiff's argument that the ALJ "simply made a conclusion" without citing the

record is unavailing.  (Pl.'s Br. at 20.)  Plaintiff's argument that the ALJ erred by not discussing

the amount of weight he gave to each one of the medical providers' individual findings is similarly

unavailing.  "The record must demonstrate that the ALJ considered all of the evidence, but an

ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007,

1009–10 (10th Cir. 1996).  Given the ALJ's discussion and analysis of both medical opinions in

the record, I find that the ALJ clearly considered all of the evidence.  (Admin. R. at 15–16.)

Further, as will be discussed in more detail, I find that the ALJ was supported by substantial

evidence in making his determination.

Plaintiff argues the ALJ erred in finding the record contained "no evidence that satisfie[d]

the [L]istings at 1.04."  (Admin. R. at 15; *see* Pl.'s Br. at 13; Pl.'s Reply Br. at 2 [filed Aug. 14,

2006] [hereinafter "Pl.'s Reply"].)  Plaintiff posits that if the ALJ had "properly considered all of

the evidence," including evidence of Plaintiff's motor and sensory loss, he "could easily" have

concluded that Plaintiff met Listing 1.04.  (Pl.'s Reply at 2.)  Before turning to the substance of

Plaintiff's argument, I emphasize that for Plaintiff "to show that [her] impairment matches a

listing, it must meet all of the specified medical criteria.  An impairment that manifests only some

of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521,

530 (1990).  To meet the requirements under Listing 1.04, an individual must suffer from a spine

disorder — which, as relevant in this case, may be satisfied by a vertebral fracture — resulting in

compromise of a nerve root or the spinal cord.  20 C.F.R. Part 404, App. 1 (2006).  Additionally,

the individual must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss accompanied by
> sensory or reflex loss and, if there is involvement of the lower back, positive
> straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of
> tissue biopsy, or by appropriate medically acceptable imaging, manifested by
> severe burning or painful dysesthesia, resulting in the need for changes in position
> or posture more than once every [two] hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings
> on appropriate medically acceptable imaging, manifested by chronic nonradicular
> pain and weakness, and resulting in inability to ambulate effectively. . . .

*Id.*  Although Plaintiff does not expressly identify which subsection she feels she meets, the only

subsection that contemplates the issues about which she argues is Listing 1.04A.  (*See* Pl.'s Br. at

14.)  Accordingly, it is the only subsection I address.

    In the case at bar, the ALJ found that "the medical evidence [did] not demonstrate the

radiculopathic distribution of motor and sensory loss required" to satisfy Listing 1.04.  (Admin. R.

at 15.)  Plaintiff asserts that Dr. Hillmer's findings that Plaintiff: (1) walked with a limp; (2) had a

reduced range of motion in her back; (3) could not lift herself onto her toes; (4) had no feeling or

reaction in her feet, decreased toe flexion, and no Achilles reflex; (5) experienced decreased

sensation in her calves; and (6) had fixed joints and exaggerated curvature (ankylosis and kyphosis, respectively) in her back were all relevant and the ALJ therefore erred in failing to discuss or evaluate these findings. (Pl.'s Br. at 14.)

Although Plaintiff points to medical evidence supporting motor and sensory loss, she points to no evidence: (1) contradicting the ALJ's finding that Plaintiff experienced neuropathy; or (2) expressly stating that she experienced radiculopathy, a medical issue separate and apart from neuropathy. (*Id.*; *see* Admin. R. at 91, 98–99.) Rather, Plaintiff baldly asserts that analysis of the findings she emphasizes was relevant and requisite to the ALJ's determination. (Pl.'s Br. at 14.) I question the propriety of Plaintiff's arguments and conclusory assertions before this court, and underscore their unconvincing nature. As stated above, this court's sole task is to determine whether the record contains substantial evidence supporting the ALJ's decision. *Hamilton*, 961 F.2d at 1497–98. Given the record, I find that the objective medical evidence sufficiently supports the ALJ's determination that Plaintiff experiences neuropathy. (Admin. R. at 15, 90.) Plaintiff does not contradict or undermine the ALJ's determination as to this aspect. (*See* Pl.'s Br.; Admin. R.) To the extent Plaintiff's argument can be construed to convey that the findings she emphasizes evidence radiculopathy, said argument is futile. Plaintiff points to no direct evidence of radiculopathy, and I neither can nor will reweigh the evidence in a wayward effort to determine whether the findings she discusses indirectly evidence radiculopathy.[8] *Jordan*, 835 F.2d

---

[8]Even if I could consider the evidence, Plaintiff makes no argument that the findings evince or even suggest radiculopathy. (Pl.'s Br. at 11, 14; Pl.'s Reply at 1–2.)

at 1316.  Based on the foregoing, I find that the ALJ relied on substantial evidence and did not err in his determination that Plaintiff's ailment did not satisfy Listing 1.04A.

### c.     Development of the Record

Plaintiff argues that the ALJ failed to develop the record, based upon his failure to: (1) subpoena records from 1979; (2) question Plaintiff about her activities of daily life; and (3) investigate further Plaintiff's statements at the hearing as to her incontinence and inability to sit for long periods of time.  (Pl.'s Br. at 19–21.)  "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Henrie v. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).  The ALJ is specifically tasked with discerning the facts relevant to his decision and learning the claimant's version of those facts.  *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987).  This obligation is heightened where, as in the instant case, "the claimant is unrepresented [at the hearing]."  *Henrie*, 13 F.3d at 361.  With this in mind, I turn to Plaintiff's arguments.

Plaintiff contends that the ALJ erred in failing to subpoena her medical records from 1979 in order to assess her RFC.  (Pl.'s Br. at 20–21.)  In support of this contention, Plaintiff cites the Tenth Circuit's decision in *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996), for the proposition that an ALJ "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  (Pl.'s Br. at 20.)  Plaintiff's argument is unavailing.  Disability is statutorily defined as an inability to engage in any substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A) (2006).  As is entirely evident from the record evidence, Plaintiff performed substantial gainful activity by working at various jobs after

-18-

1979. (Admin. R. at 42.) Given Plaintiff's ability to work at points between 1979 and 2004, I find it markedly difficult to ascertain what information might be contained in records from 1979 that would be relevant in assessing Plaintiff's RFC twenty-five years later. (*Id.* at 52, 68; Pl.'s Br. at 20–21.) Plaintiff makes no efforts to aid in this endeavor. (*See* Pl.'s Br.) Accordingly, I find no error in the ALJ's refusal to subpoena Plaintiff's 1979 medical records.

Plaintiff's arguments regarding the ALJ's line of questioning as to Plaintiff's daily activities are similarly unavailing. (*Id.* at 20.) Plaintiff provides no legal support for her implicit assertion that an ALJ must question a claimant as to her daily activities, and I find none. (*Id.*) The record contains Plaintiff's own description of her daily activities in the form of her: (1) personal pain questionnaire; (2) daily activities questionnaire; and (3) statements to Dr. Hillmer. (Admin. R. at 60–61, 62–65, 97.) The ALJ expressly considered Plaintiff's own reports of her activities. (*Id.* at 15.) Accordingly, I find no error in the ALJ's failure to question Plaintiff about her daily activities at the hearing.

Finally, Plaintiff argues that the ALJ erred in failing to contact Plaintiff's medical care providers regarding her statements at the hearing that she cannot work because she: (1) is incontinent; and (2) cannot sit for long periods without experiencing pain. (Pl.'s Br. at 20.) I emphasize here that the burden is on Plaintiff to prove her disability. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Isolated and unsupported comments by a claimant before an ALJ are, by themselves, insufficient to raise the suspicion of the existence of a non-exertional impairment. *Id.* Indeed, to oblige an ALJ to make additional investigation into an issue, "some objective evidence [must be] in the record suggesting the existence of a condition which could

have a material impact on the disability decision requiring further investigation." *Id.* Here, no record evidence supports Plaintiff's statement that she "had to leave work" because of her incontinence. (Admin. R. at 134.) Plaintiff did not assert incontinence as a disabling condition in her application and admitted at the hearing that she did not seek medical treatment for this alleged condition.[9] (*Id.* at 67, 134–35.) In poignant contrast, the record reveals that Dr. Hillmer noted Plaintiff experienced pain in her buttocks "if she [sat] very long." (*Id.* at 95.) Although slight, this objective medical evidence militates in favor of obtaining further information as to Plaintiff's pain upon sitting. Further, such a result is in keeping with Plaintiff's more compelling argument regarding the ALJ's duty to rely upon specific medical evidence in assessing her RFC, which I discuss below.

### d. Assessment of Plaintiff's RFC

Plaintiff asserts that the ALJ erred in assessing Plaintiff's RFC by failing: (1) to consider Plaintiff's non-exertional impairments; and (2) to obtain information as to any limitations on Plaintiff's ability to sit, as a requirement of performing sedentary work. (Pl.'s Br. at 17–19.)

---

[9]Similarly, Plaintiff argues the ALJ erred in failing to consider her statement that she sometimes has to "read things a coupl[e] times to get it [sic]." (Admin. R. at 62; *see* Pl.'s Br. at 19.) Plaintiff did not allege a mental deficit prevented her from working, nor does any record evidence support such a statement. Indeed, Dr. Hillmer found Plaintiff's intelligence to be "average to above average," and in the sentence preceding the one Plaintiff cites, Plaintiff herself assessed her ability to understand as "OK." (Admin. R. at 62, 98.)

Plaintiff's first argument is duplicative of her arguments, analyzed above, concerning the ALJ's failure to develop the record.  Consequently I discuss only Plaintiff's second argument.

It is well established that an "ALJ should 'first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [RFC] for work activity on a regular and continuing basis.'"  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing 20 C.F.R. § 404.1545[b]); *see also* Soc. Sec. Ruling 96–8P, 1996 WL 374184 at *7  (July 2, 1996) ("In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities . . . based on the evidence available in the case record.").  In the instant case, none of Plaintiff's medical care providers opined on Plaintiff's performance of work-related activities, such as the amount of weight she could lift, the frequency with which she could lift such weight, or the amount of time she could sit or stand in a day.  Indeed, none of Plaintiff's providers opined at all on Plaintiff's abilities to perform work-related activities.  The only record evidence relating to said abilities appears in an assessment form completed by a disability examiner who did not personally examine Plaintiff.  (Admin. R. at 101–08.)  The ALJ rightly disregarded this assessment in its entirety.  (*Id.* at 15–16.)  As such, the ALJ's RFC determination was not supported by substantial evidence.

An ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  Soc. Sec. Ruling 96–8p, 1996 WL 374184 at *5.  Upon finding no substantial evidence upon which to base an RFC finding, an ALJ may re-contact the claimant's physicians and subpoena any previously undisclosed medical records.  20 C.F.R. §§ 404.950(d), 404.1519a (2006); *see Adkins v. Barnhart*, 80 F. App'x 44, 48 (10th Cir. 2003).  If additional

records either do not exist or are insufficient to substantiate a determination, the ALJ may order a

consultative examination.  20 C.F.R. §§ 416.912(e)–(f) (2006); *Adkins*, 80 F. App'x at 48.  In the

instant case, given the lack of evidence upon which to base his RFC assessment, the ALJ should

have re-contacted Plaintiff's medical care providers or ordered further examination as to

Plaintiff's abilities to perform work-related activities.  *See White v. Barnhart*, 287 F.3d 903, 908

(10th Cir. 2002) (noting ALJ must recontact a treating physician when the information the

physician provides is inadequate to determine whether the claimant is disabled).  The ALJ

committed reversible error in his failure to do so.  The ALJ's error at step four in determining

Plaintiff's RFC necessarily taints the ALJ's determination at step five that work Plaintiff could

perform is available in the national economy.  (Admin. R. at 17.)

**4.**      ***Conclusion***

Based on the foregoing, it is therefore ORDERED that the Commissioner's decision is

AFFIRMED in part and REVERSED and REMANDED in part for proceedings consistent with

this opinion.

Dated this 30th day of November, 2006.

BY THE COURT:

s/ Edward W. Nottingham

-22-

EDWARD W. NOTTINGHAM
United States District Judge